1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

NORMA LARRANAGA,                    )   Case No. CV 08-327 JC
                                    )
              Plaintiff,            )
                                    )
       v.                           )   MEMORANDUM OPINION AND
                                    )   ORDER OF REMAND
                                    )
MICHAEL J. ASTRUE,                  )
Commissioner of Social              )
Security,                           )
                                    )
              Defendant.            )
_____           )

**I.    SUMMARY**

       On January 24, 2008,  plaintiff Norma Larranaga ("plaintiff") filed a

Complaint seeking review of the Commissioner of Social Security's denial of

plaintiff's application for benefits.  The parties have filed a consent to proceed

before a United States Magistrate Judge.

       This matter is before the Court on the parties' cross motions for summary

judgment, respectively ("Plaintiff's Motion") and ("Defendant's Motion").  The

Court has taken both motions under submission without oral argument.  See Fed.

R. Civ. P. 78; L.R. 7-15; January 28, 2008 Case Management Order, ¶ 5.

///

1    Based on the record as a whole and the applicable law, the decision of the

2  Commissioner is REVERSED AND REMANDED for further proceedings

3  consistent with this Memorandum and Opinion and Order of Remand.

4  **II.    BACKGROUND AND SUMMARY OF ADMINISTRATIVE**

5  **DECISION**

6    On October 26, 2005, plaintiff filed an application for Supplemental

7  Security Income benefits.  (Administrative Record ("AR") 51).  Plaintiff asserted

8  that she became disabled on August 29, 2005, due to mental problems, carpal

9  tunnel syndrome, and a hysterectomy.  (AR 51, 85).  The ALJ examined the

10  medical record and heard testimony from plaintiff (who was assisted by a non-

11  attorney representative) and a vocational expert on April 5, 2007.  (AR 332-343).

12    On April 21, 2007, the ALJ determined that plaintiff was not disabled

13  through the date of the decision.  (AR 19-24).  Specifically, the ALJ found:

14  (1) plaintiff suffered from probable mild carpal tunnel syndrome, left greater than

15  right; and depressive disorder, not otherwise specified (AR 23); (2) plaintiff did

16  not suffer from a "severe" mental impairment (AR 22, 23);[1] (3) plaintiff's

17  impairments or combination of impairments did not meet or medically equal one

18  of the listed impairments (AR 23); (4) plaintiff retained the residual functional

19  capacity to perform a significant range of light work[2] (AR 23); (5) plaintiff could

20  not return to her past relevant work (AR 23); (6) there were a significant number

21  of jobs in the national economy that plaintiff could perform (AR 24); and

22  ///

23

24

25    [1]The ALJ did not expressly state whether plaintiff's physical impairments were "severe."

26    [2]The ALJ determined that plaintiff:  (i) could lift and carry 20 pounds occasionally and 10
pounds frequently; (ii) could stand and walk for six hours in an eight-hour workday; (iii) could
27  sit for six hours in an eight-hour workday; (iv) had mild restrictions of activities of daily living;
(v) had mild difficulties in maintaining social functioning; and (vi) had mild difficulties in
28  maintaining concentration, persistence, or pace with no episodes of decompensation.  (AR 21,
22, 23).

2

1   (7) plaintiff's allegations regarding her limitations were not totally credible.  (AR
2   21, 22).

3       On June 21, 2007, plaintiff's current counsel began representing her and
4   plaintiff requested that the Appeals Council review the ALJ's decision.  (AR 12-
5   15).  Counsel requested, and the Appeals Council agreed to afford plaintiff's
6   counsel 25 days from counsel's receipt of the record to submit more evidence or a
7   statement about the facts and law in the case.  (AR 9-10, 12).  Plaintiff's counsel
8   submitted additional medical records for consideration by the Appeals Council.
9   (AR 4, 302-31).  The Appeals Council denied plaintiff's application for review on
10  November 21, 2007.  (AR 5-7).

11  **III.    APPLICABLE LEGAL STANDARDS**

12      **A.    Sequential Evaluation Process**

13      To qualify for disability benefits, a claimant must show that she is unable to
14  engage in any substantial gainful activity by reason of a medically determinable
15  physical or mental impairment which can be expected to result in death or which
16  has lasted or can be expected to last for a continuous period of at least twelve
17  months.  Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005) (citing 42 U.S.C.
18  § 423(d)(1)(A)).  The impairment must render the claimant incapable of
19  performing the work she previously performed and incapable of performing any
20  other substantial gainful employment that exists in the national economy.  Tackett
21  v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999) (citing 42 U.S.C. § 423(d)(2)(A)).

22      In assessing whether a claimant is disabled, an ALJ is to follow a five-step
23  sequential evaluation process:

24      (1)    Is the claimant presently engaged in substantial gainful activity?  If
25             so, the claimant is not disabled.  If not, proceed to step two.

26      (2)    Is the claimant's alleged impairment sufficiently severe to limit
27             her ability to work?  If not, the claimant is not disabled.  If so,
28             proceed to step three.

(3)     Does the claimant's impairment, or combination of
impairments, meet or equal an impairment listed in 20 C.F.R.
Part 404, Subpart P, Appendix 1?  If so, the claimant is
disabled.  If not, proceed to step four.

(4)     Does the claimant possess the residual functional capacity to
perform her past relevant work?[3]  If so, the claimant is not
disabled.  If not, proceed to step five.

(5)     Does the claimant's residual functional capacity, when
considered with the claimant's age, education, and work
experience, allow her to adjust to other work that exists in
significant numbers in the national economy?  If so, the
claimant is not disabled.  If not, the claimant is disabled.

Stout v. Commissioner, Social Security Administration, 454 F.3d 1050, 1052 (9th
Cir. 2006) (citing 20 C.F.R. §§ 404.1520, 416.920).

The claimant has the burden of proof at steps one through four, and the
Commissioner has the burden of proof at step five.   Bustamante v. Massanari, 262
F.3d 949, 953-54 (9th Cir. 2001) (citing Tackett); see also Burch, 400 F.3d at 679
(claimant carries initial burden of proving disability).

**B.     Standard of Review**

Pursuant to 42 U.S.C. section 405(g), a court may set aside a denial of
benefits only if it is not supported by substantial evidence or if it is based on legal
error.  Robbins v. Social Security Administration, 466 F.3d 880, 882 (9th Cir.
2006) (citing Flaten v. Secretary of Health & Human Services, 44 F.3d 1453, 1457
(9th Cir. 1995)).  Substantial evidence is "such relevant evidence as a reasonable
mind might accept as adequate to support a conclusion."  Richardson v. Perales,
402 U.S. 389, 401 (1971) (citations and quotations omitted).  It is more than a

---

[3]Residual functional capacity is "what [one] can still do despite [one's] limitations" and
represents an "assessment based upon all of the relevant evidence."  20 C.F.R. §§ 404.1545(a),
416.945(a).

4

1  mere scintilla but less than a preponderance.  <u>Robbins</u>, 466 F.3d at 882 (citing
2  <u>Young v. Sullivan</u>, 911 F.2d 180, 183 (9th Cir. 1990)).

3          To determine whether substantial evidence supports a finding, a court must
4  "'consider the record as a whole, weighing both evidence that supports and
5  evidence that detracts from the [Commissioner's] conclusion.'"  <u>Aukland v.</u>
6  <u>Massanari</u>, 257 F.3d 1033, 1035 (9th Cir. 2001) (quoting <u>Penny v. Sullivan</u>, 2 F.3d
7  953, 956 (9th Cir. 1993)).  If the evidence can reasonably support either affirming
8  or reversing the ALJ's conclusion, a court may not substitute its judgment for that
9  of the ALJ.  <u>Robbins</u>, 466 F.3d at 882 (citing <u>Flaten</u>, 44 F.3d at 1457).

10  **IV.   PERTINENT FACTS**

11          On August 15, 2005, plaintiff sought mental health treatment at Long Beach
12  Mental Health for depression, anxiety, sleep disturbance, difficulty concentrating,
13  and irritability.  (AR 119-24, 143-50).  Psychologist Peter Jay, Ph.D./R.N.,
14  conducted a mental status evaluation, which reflects, *inter alia*:  Plaintiff appeared
15  restless and agitated; her mood was dysphoric, tearful, and irritable; her affect was
16  labile, sad, and worried; she performed her serial sevens poorly.  (AR 123).  Dr.
17  Jay diagnosed plaintiff with adjustment disorder with mixed anxiety features[4] and
18  assessed a Global Assessment of Functioning ("GAF") of 57.[5]  (AR 124).  He
19  opined that plaintiff was "unable to work at this time due to her recurrent ptsd
20  [post traumatic stress disorder] and depressive symptoms."  (AR 148).
21  ///

22
23          [4]Dr. Jay noted that the diagnosis was based on an interview conducted on December 28,
    2004.  (AR 124).
24
25          [5]A GAF is the clinician's judgment of the individual's overall level of functioning.  It is
    rated with respect only to psychological, social, and occupational functioning, without regard to
26  impairments in functioning due to physical or environmental limitations.  <u>See</u> American
    Psychiatric Association, <u>Diagnostic and Statistical Manual of Mental Disorders</u>, 32 (4th ed.
27  2000) (hereinafter "DSM IV").  A GAF of 51-60 indicates "[m]oderate symptoms (*e.g.*, flat
    affect and circumstantial speech, occasional panic attacks or moderate difficulty in social,
28  occupational, or school functioning (*e.g.*, few friends, conflicts with peers or co-workers)."  DSM
    IV at 34.

5

1    Jerome Grose, M.D., prescribed plaintiff Seroquel, Prozac, and Remeron on

2    September 8, 2005.  (AR 126).  On November 17, 2005, Dr. Grose noted that

3    plaintiff's response to her medication was "good thus far" and added Buspar to

4    plaintiff's list of prescribed medication.  (AR 126).

5    On November 21, 2005, Dr. Jay administered another mental status

6    examination and diagnosed plaintiff with adjustment disorder with mixed

7    emotional features.  (AR 139-42).  Dr. Jay opined that, in plaintiff's current

8    emotional state, plaintiff would not be able to function effectively on the job or to

9    deal with normal stresses in the average work environment.  (AR 141).  He noted,

10   however, that plaintiff's prognosis was "positive, good."  (AR 142).

11   Ernest Bagner, M.D., performed a consultative psychiatric evaluation at the

12   behest of the Social Security Administration on December 22, 2005.  (AR 160-63).

13   Dr. Bagner reviewed no medical records.  (AR 160).  His only source of

14   information for the evaluation was plaintiff herself.  (AR 160).   Dr. Bagner

15   diagnosed plaintiff with depressive disorder, not otherwise specified, and assessed

16   a GAF of 74.[6]  (AR 162).  He opined that plaintiff would have no limitations

17   interacting with supervisors, peers, and the public; zero to mild limitations

18   completing simple tasks and maintaining concentration and attention; and mild

19   limitations handling normal stresses at work, completing complex tasks, and

20   completing a normal work week without interruption.  (AR 163).

21   On February 9, 2006, Jason Kornberg, M.D., a state agency physician,

22   reviewed plaintiff's medical records and Dr. Bagner's report, and completed a

23   Psychiatric Review Technique form, wherein he opined that plaintiff suffered from

24   an adjustment disorder with mixed depressive and anxiety symptoms.  (AR 176).

25   He found that plaintiff had mild restrictions of activities of daily living; mild

26   _____

27   [6]A GAF of 71 to 80 is indicative of situations where, "[i]f symptoms are present, they are
     transient and expectable reactions to psychosocial stressors (*e.g.*, difficulty concentrating after
28   family argument); no more than slight impairment in social, occupational, or school functioning
     (*e.g.*, temporarily falling behind in schoolwork.)."  DSM IV at 34.

6

difficulties in maintaining social functioning; moderate difficulties in maintaining concentration, persistence, or pace; and no episodes of decompensation, each of extended duration.  (AR 174).  Dr. Kornberg concluded that plaintiff's impairment was severe but that it was not expected to last 12 months.  (AR 164, 176).  He based his opinion that the impairment was temporary on the treating physician's diagnosis and opinion that plaintiff's prognoses was good and that the level of impairment was expected to be temporary.  (AR 176).  Dr. Kornberg noted that "there was nothing in [Dr. Bagner's] report or in the other data to indicate otherwise *at present time*."  (AR 176) (emphasis added).

Long Beach Mental Health treatment notes dated February 9, 2006 – the same date as Dr. Kornberg's report – reflect that plaintiff's response to her medication was "very good."  (AR 296).

Approximately a year later, on February 22, 2007, another mental status evaluation was conducted at Long Beach Mental Health.  The assessment of the treating professional (whose name is illegible) reflects:  plaintiff appeared restless and guarded/suspicious; her intellectual functioning and memory were impaired; her mood was described as "lack of pleasure" and hopeless/worthless; her affect was labile; she had auditory hallucinations; her concentration, judgment, and insight were impaired; she performed the serial sevens poorly; and she experienced persecutory/paranoid delusions and persecutory ideations.  (AR 269-81).  Plaintiff was diagnosed with bipolar disorder[7] and assessed a GAF of 30.[8] (AR 273, 281).  The treating professional opined that plaintiff was unable to work.  (AR 274).

---

[7]The physician noted that the diagnosis was based on an Adult Initial Assessment conducted on October 26, 2006.  (AR 273).

[8]A GAF of 21 to 30 indicates "[b]ehavior is considerably influenced by delusions or hallucinations or serious impairment in communication or judgment (*e.g.*, sometimes incoherent, acts grossly inappropriately, suicidal preoccupation) or inability to function in almost all areas (*e.g.*, stays in bed all day; no job, home, or friends)."  DSM IV at 34.

1    Long Beach Mental Health treatment notes dated March 20, 2007, reflect

2  that plaintiff's response to her medication was "poor."  (AR 295).  Treatment notes

3  dated June 11, 2007, reflect that plaintiff continued to experience pressured

4  speech, major depression, and post traumatic stress disorder.  (AR 330).

5  **IV.   DISCUSSION**

6       **A.      A Remand Is Appropriate Based Upon the ALJ's Errors at Step**

7              **Two of the Sequential Analysis**

8       Plaintiff contends that the ALJ erred in failing to find that plaintiff suffered

9  from a severe mental impairment. (Plaintiff's Motion at 7).  She argues, *inter alia*,

10 that the ALJ improperly rejected the treating physicians' opinions regarding the

11 degree of her mental impairment. (Plaintiff's Motion at 10-11).  Defendant

12 responds that plaintiff failed to meet her burden to demonstrate that she suffered

13 from a severe mental impairment for a continuous period of twelve months and

14 that the ALJ properly rejected the opinions of plaintiff's treating physicians' and

15 adopted the opinion of Dr. Bagner.  As the ALJ erred in his assessment of the

16 opinions of plaintiff's treating physicians, a remand is appropriate.

17              **1.      Applicable Law**

18      As noted above, plaintiff has the burden of proving at step two of the

19 sequential evaluation process that she has a severe impairment that lasted or is

20 expected to last for a continuous period of at least 12 months *or* a combination of

21 impairments that is severe and meets the foregoing duration requirement.  20

22 C.F.R. §§ 416.909, 416.920(a)(4)(ii).  An impairment or combination of

23 impairments is severe if it significantly limits one's ability to perform basic work

24 activities. 20 C.F.R. § 416.920(c).  An impairment or combination of impairments

25 is "non-severe" if it does not significantly limit one's physical or mental ability to

26 do basic work activities.  20 C.F.R. § 416.921(a).  Basic work activities are the

27 "abilities and aptitudes necessary to do most jobs," such as (1) physical functions

28 like walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, and

1  handling; (2) the capacity for seeing, hearing, and speaking; (3) understanding,

2  carrying out, and remembering simple instructions; (4) the use of judgment;

3  (5) responding appropriately to supervision, co-workers, and usual work

4  situations; and (6) dealing with changes in a routine work setting.  20 C.F.R.

5  § 416.921(b).

6       Step two is "a de minimis screening device [used] to dispose of groundless

7  claims."  Smolen v. Chater, 80 F.3d 1273, 1290 (9th Cir. 1996).  An ALJ may find

8  that a claimant lacks a medically severe impairment or combination of

9  impairments only when this conclusion is clearly established by medical evidence.

10  Webb v. Barnhart, 433 F.3d 683, 687 (9th Cir. 2005) (citation omitted).  An ALJ

11  errs as a matter of law if he considers a claimant's physical and mental

12  impairments separately at step two.  Burrow v. Barnhart, 224 Fed. Appx. 613 (9th

13  Cir. 2007) (unpublished) (at step two, ALJ must consider combined effect of all of

14  individual's impairments without regard to whether any such impairment, if

15  considered separately would be of sufficient severity) (citations omitted).[9]  Thus, if

16  a claimant suffers from a severe physical impairment for at least one year, then the

17  combination of the claimant's physical and mental impairments necessarily must

18  have been severe for at least one year.  Id.

19       Applying the normal standard of review to the requirements of step two, a

20  court must determine whether an ALJ had substantial evidence to find that the

21  medical evidence clearly established that the claimant did not have a medically

22  severe impairment or combination of impairments.  Webb, 433 F.3d at 687; see

23  also Yuckert v. Bowen, 841 F.2d 303, 306 (9th Cir. 1988) ("Despite the deference

24  usually accorded to the Secretary's application of regulations, numerous appellate

25  courts have imposed a narrow construction upon the severity regulations applied

26  here.").

27

28

     [9]The Court may cite unpublished Ninth Circuit opinions issued on or after January 1,
2007.  See U.S. Ct. App. 9th Cir. Rule 36-3(b); Fed. R. App. P. 32.1(a).

1

### 3.   Analysis

2    First, as a threshold matter, the Court notes that the ALJ failed expressly to

3    find whether or not plaintiff suffered from *any* severe impairment.  Although the

4    ALJ noted that plaintiff suffered from probable mild carpal tunnel syndrome, left

5    greater than right; and depressive disorder, not otherwise specified, the ALJ made

6    no finding that the former (physical) impairment was severe.  As the ALJ

7    expressly found that the latter (mental) impairment was not severe and did not

8    similarly find that the former impairment was not severe, and as the ALJ did not

9    stop at step two of the sequential evaluation process, this Court infers that the ALJ

10   concluded that plaintiff's physical impairment was severe at step two.[10]

11   Second, the Court finds that the ALJ erred in considering plaintiff's

12   physical and mental impairments separately at step two.  <u>Burrows</u>, 224 Fed Appx.

13   at **1.  If , as this Court infers, the ALJ concluded that plaintiff suffered from a

14   severe physical impairment for at least one year, then the combination of her

15   physical and mental impairments must have been severe for at least one year.  <u>Id.</u>

16   Accordingly, the Court rejects defendant's contention regarding the insufficient

17   duration of plaintiff's mental impairment for purposes of step two of the analysis.

18   Third, the ALJ erred in his assessment of the opinions of plaintiff's treating

19   physicians.  Plaintiff was treated at Long Beach Mental Health from at least mid-

20   August 2005 to March 2007.  As noted above, on August 15, 2005, Dr. Jay

21   assessed plaintiff's GAF score at 57, which is indicative of moderate symptoms or

22   moderate difficulty in social or occupational functioning, and opined that plaintiff

23   was unable work.  (AR 124, 144).  On November 21, 2005, Dr. Jay opined that in

24   plaintiff's current emotional state, she would not be able to function effectively on

25   the job.  Although plaintiff's mental condition improved for a period of time with

26   medication, on February 22, 2007, a treating physician assessed plaintiff's GAF

27

28
      [10]On remand, the ALJ should expressly state whether he finds that plaintiff suffers from a severe impairment or combination of impairments and identify such impairment(s).

1    score at 30, indicating a serious impairment in communication/judgment or an

2    inability to function in almost all areas.  (AR 273-74).  The physician further

3    opined that plaintiff was unable to work.  (AR 273-74). A month later, a treating

4    physician reported that plaintiff responded poorly to her medication.  (AR 295).

5          The ALJ rejected the opinions of the foregoing treating physicians in favor

6    of that of the consulting examiner Dr. Bagner, who opined in late 2005, that

7    plaintiff would have no more than mild work limitations resulting from her mental

8    impairment.  As the ALJ rejected the opinions of plaintiff's treating physicians in

9    favor of a conflicting opinion of another examining physician, the ALJ was

10   required to make findings setting forth specific, legitimate reasons for doing so

11   based on substantial evidence in the record.  See Orn v. Astrue, 495 F.3d 625, 632

12   (9th Cir. 2007).  Here, the ALJ stated that "their [the treating physicians']

13   conclusions [were] merely subjective and not supported by the record as a whole."

14   (AR 22).  This was insufficient to satisfy the ALJ's requirement to present specific

15   and legitimate reasons for rejecting a treating physician's opinion.  See Embrey v.

16   Bowen, 849 F.2d 418, 421-22 (9th Cir. 1988) ("To say that medical opinions are

17   not supported by sufficient objective findings or are contrary to the preponderant

18   conclusions mandated by the objective findings does not achieve the level of

19   specificity our prior cases have required, even when the objective factors are listed

20   seriatim.  The ALJ must do more than offer his conclusions.  He must set forth his

21   own interpretations and explain why they, rather than the doctors', are correct.")

22   (footnote omitted).  Moreover, the reasons given by the ALJ were unsupported.

23   The treating physicians' opinions were based on their findings from mental status

24   examinations.  These findings are medically demonstrable and observable

25   phenomena which indicate specific abnormalities of behavior, affect, thought,

26   memory, orientation, or contact with reality.  See 20 C.F.R. § 416.928(b).

27   Notably, Dr. Bagner – who saw plaintiff on one occasion, who reviewed no

28   medical records, and whose only source of information was plaintiff herself –

11

1   appears to have done nothing more than plaintiffs' treating physicians, and indeed,

2   evaluated the same criteria.  In light of these facts, the Court finds that the ALJ's

3   articulated reasons for rejecting the opinions of the treating physicians in favor of

4   the opinion of Dr. Bagner are not supported by substantial evidence.

5        On remand, the ALJ should reassess the evidence regarding the degree of

6   plaintiff's mental impairment(s), make appropriate findings, and consider such

7   impairment(s) in combination with plaintiff's other impairments, at all appropriate

8   steps of the sequential evaluation process.

9   **V.    CONCLUSION**[11]

10       For the foregoing reasons, the decision of the Commissioner of Social

11  Security is reversed in part, and this matter is remanded for further administrative

12  action consistent with this Opinion.[12]

13  DATED:   December 1, 2008              _____/s/_____

14                                         Honorable Jacqueline Chooljian
                                           UNITED STATES MAGISTRATE JUDGE
15

16

17

18  _____

19      [11]The Court need not, and has not adjudicated plaintiff's other challenges to the ALJ's
    decision except insofar as to determine that a reversal and remand for immediate payment of
20  benefits would not be appropriate.  The Court nonetheless notes that on remand the ALJ should
    consider (i) whether plaintiff is obese; (ii) if so, the combined effect of obesity with plaintiff's
21  other impairments on plaintiff's ability to work; and (iii) whether the record needs to be
    developed further on such issues.  See Social Security Ruling ("SSR") 02-1p at *6 (ALJ should
22  consider "the effect obesity has upon the individual's ability to perform routine movement and
    necessary physical activity within the work environment. . . . The combined effects of obesity
23  with other impairments may be greater than might be expected without obesity. . . ."); Celaya v.
    Halter, 332 F.3d 1177, 1182 (9th Cir. 2003) (obesity should be considered when evaluating
24  disability even if plaintiff did not explicitly raise obesity as a possible disabling factor).

25

26      [12]When a court reverses an administrative determination, "the proper course, except in
    rare circumstances, is to remand to the agency for additional investigation or explanation."
27  Immigration & Naturalization Service v. Ventura, 537 U.S. 12, 16 (2002) (citations and
    quotations omitted).  Remand is proper where, as here, additional administrative proceedings
28  could remedy the defects in the decision.  McAllister v. Sullivan, 888 F.2d 599, 603 (9th Cir.
    1989).